IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA A/S/O STATE & LOUISE, LLC, and 216 LOUISE, LLC, <br><br> PLAINTIFF, <br><br> V. <br><br> LILIANA SANCHEZ d/b/a LS PLUMBING, PRECISION PLUMBING COMPANY, INC., TRISTAR CONSTRUCTION, INC., JOSE GUADALUPE PEREZ, JOSE GUADALUPE PACHECO, JOSE RICARDO CAMPOS, ARTURO SANCHEZ, AND DELFINO SANCHEZ, <br><br> DEFENDANTS. | CASE NO. 3:14-cv-02262 <br> Judge Haynes |

**DEFENDANT PRECISION PLUMBING COMPANY, INC.'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND FOR ENTRY OF A FINAL JUDGMENT AGAINST PRECISION PLUMBING COMPANY, INC.**

Comes Defendant Precision Plumbing Company, Inc. (hereinafter "Defendant Precision"), by and through counsel, and submits its Response to Plaintiff's Motion for Summary Judgment and for Entry of a Final Judgment against Precision Plumbing Company, Inc.

**Summary of the Argument**

Despite the undisputed fact that neither Plaintiff, nor its subrogor building owners enjoys privity of contract with Defendant Precision, Plaintiff has moved the Court for summary judgment to be entered against Defendant Precision based on principles set forth in Federal Insurance Company v. Winters, 354 S.W.3d 287 (Tenn. 2011). In light of the fact that the Winters ruling is based entirely on breach of implied contractual duties, Defendant Precision respectfully requests that the Court reject Plaintiff's demand for a final judgment to be entered against it as to liability, damages, and pre-judgment interest.

**Issues**

I. Whether or not there exists a genuine issue of material fact that Plaintiff is entitled to summary judgment as a matter of law against Defendant Precision as to liability based on its alleged breach of non-delegable contractual duties.

II. Whether or not there exists a genuine issue of material fact that Plaintiff is entitled to summary judgment as a matter of law as to damages and pre-judgment interest against Defendant Precision.

**Facts[1]**

The current lawsuit arises out of a January 30, 2014 fire at the Villa Louise apartments, located at 216 Louise Avenue in Nashville. (DE#53, p. 2). Villa Louise was/is owned by State & Louise, LLC and 216 Louise, LLC. (DE#53, p. 2). The fire destroyed all but the first story garage of the 20 unit apartment building. (DE#53, p. 3). At the time of the fire, no residents inhabited the building because of a prior, unrelated water loss on the property. (DE#53, p. 3).

After the water loss, but prior to the subject fire, the building owners hired general contractor Defendant Tristar Construction, Inc. (hereinafter "Defendant Tristar") to restore the building. Upon information and belief, no written contract existed between the building owners and Defendant Tristar. (DE#67, p. 4).

Defendant Tristar entered into a contract with Defendant Precision for completion of the plumbing work. No written contract existed between Defendant Tristar and Defendant Precision. (DE#67, p. 4).

Defendant Precision entered into a written "Subcontractor Agreement" with Defendant Liliana Sanchez d/b/a LS Plumbing (hereinafter "Defendant LS") on September 9, 2013. (DE#19, Exhibit A). This Agreement, in part, required Defendant LS to perform the plumbing work "to the reasonable satisfaction of the Owner and Contractor, and in accordance with all ordinances, rules, regulations, and requirements of any and all governmental authorities and with all applicable federal, state, or local codes." Id.

---

[1] In this section, Defendant Precision recites only facts relevant to determination of the present Motion. Defendant omits reference to its comparative fault allegation against non-party Nashville Fire Department and to the declaratory judgment action filed by Western World Insurance Company, insurer for Defendant LS Plumbing and the individual plumber Defendants.

For the purpose of the present Motion, Plaintiff and Defendant Precision agree that the subject fire was caused, in part, by the negligence of the individual plumber Defendants employed by Defendant LS.

Following the fire, Plaintiff paid its insured building owners damages for the restoration of the building. (DE#53, p. 12). Subsequently, Plaintiff, in its capacity as subrogee of the building owners, initiated the current subrogation lawsuit on November 13, 2014 (DE# 1) and asserted claims of negligence, respondeat superior, negligence per se, and breach of non-delegable contractual duties against eight (8) Defendants, including Defendant Tristar, Defendant Precision, Defendant LS, and the five (5) individual plumbers.

As of the date of the filing of this Response, there has been no proof presented that Plaintiff or the building owners formed a contract with Defendant Precision at any point in the restoration of the subject building.

**Summary Judgment Standard**

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Southeastern Pipetrades Health & Welfare Fund v. Friedman, Rodman & Frank, P.A., No. 3:13-0809, 2015 U.S. Dist. LEXIS 55360, at *15-16 (M.D. Tenn. Apr. 28, 2015)(attached as "Exhibit A").

"To prevail, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim." Id. "In determining whether the moving party has met its burden, the court must view the evidence in the light most favorable to the nonmoving party." Id. (*See* Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

3

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986).

## Law & Argument

I.  **Plaintiff's Motion for Summary Judgment as to liability should be declined because Plaintiff is unable to assert a claim for breach of implied contractual duty against Defendant Precision as a matter of law.**

Plaintiff's Motion demands that the Court find Defendant Precision in breach of its non-delegable contractual duty to perform the subject plumbing work in a careful, skillful, diligent, and workmanlike manner as discussed in Federal Insurance Company v. Winters, 354 S.W.3d 287 (Tenn. 2011). Plaintiff brings this Motion against Defendant Precision, despite the fact that neither Plaintiff, nor its subrogors, ever formed a contract with Defendant Precision. For the reasons outlined below, the Motion is without legal basis and should be rejected.

Determination of this issue requires a thorough and careful analysis of Winters. Like the fact pattern in the present lawsuit, the Winters precedent arose out of a subrogation lawsuit filed by an insurer over a fire loss caused by a negligent subcontractor.

In Winters, the home owners contracted with general contractor Winters Roofing Company to install a new roof on their home in Hixson, Tennessee. Winters, 354 S.W.3d at 289. Without providing notice to or requesting the consent of the home owners, the general contractor subcontracted with Terry Monk to actually install the roof. Id.

When the home owners complained of roof leaks after Monk's installation, Winters subcontracted with Bruce Jacobs to perform the repairs. Id. Jacobs improperly utilized a propane torch in the repair work, which cause the fire and $871,069.73 worth of damage to the home. Id. Chubb National

4

Insurance Company paid the claim on behalf of the insured home owners and subsequently filed a subrogation lawsuit against Winters. Id. at 290.[2]

Defendant Winters attempted to evade liability by arguing that, by virtue of his subcontracts with Monk and Jacobs, he had delegated away his contractual duties to the home owners. Id. The trial court agreed and dismissed the lawsuit. Id.

The Court of Appeals and Supreme Court reversed the trial court. The Supreme Court held that "[i]n addition to the explicit terms, contracts may be accompanied by implied duties, which can result in breach." Id. at 291. The Court further elucidated this principle as follows:

> **Once a builder undertakes a construction contract, the common law imposes upon him or her a duty to perform the work in a workmanlike manner, and there is an implied agreement that the building or work performed will be sufficient for the particular purpose desired or to accomplish a certain result. Thus, failure to perform a building contract in a workmanlike manner constitutes *breach of the contract*.**

Id. (*citing* Bowling v. Jones, 300 S.W.3d 288, 291 (Tenn. Ct. App. 2008)(emphasis added)).

The Supreme Court conducted a multi-state survey regarding the "principle that service contracts are accompanied by an implied obligation to perform the service skillfully, carefully, diligently, and in a workmanlike manner." Id. at 292. The Court ultimately found that the general contractor could not immunize itself from liability by subcontracting work to an independent subcontractor "[b]ecause this non-delegable duty arises from the contract entered into by the [general] contractor." Id. at 295.

As one can quickly gather from the most cursory reading of Winters, the implied, non-delegable duty at the heart of the decision arises out of *contract*. The Supreme Court made this abundantly clear when the opinion acknowledged that, at the time of the appeal, the plaintiff insurance company "no longer seeks recovery against the defendant based upon a theory of negligence." Id. at 290. Thus, the Winters precedent applies exclusively to breach of contract actions involving parties in privity of contract with one another.

---

[2] Federal Insurance Company was later substituted as Plaintiff in the lawsuit when it was discovered that Federal, and not Chubb, actually held subrogation rights. Id.

5

In the current matter, Plaintiff's Amended Complaint (DE# 53) asserts claims against Defendant Precision for negligence, negligence per se, respondeat superior, and "breach of a non-delegable contractual duty." Plaintiff's Motion for Summary Judgment against Defendant Precision is based solely on its contractual claim.

As subrogee of the building owners, Plaintiff is entitled to "raise the rights" its insureds could have asserted against potentially culpable parties. (DE#74, p. 6). However, the rights of the subrogee are only identical, and not greater than, the rights of the subrogor. McGee v. County of Wilson, 574 S.W.2d 744, 747 (Tenn. Ct. App. 1978)(*citing* C.J.S. Subrogation § 16, p. 616). Plaintiff may only assert the claims and rights that the building owners could have asserted against Defendant Precision.

It is undisputed by all parties that the building owners had a contract only with Defendant Tristar. Accordingly, Plaintiff's claims regarding breach of an implied contractual duty, as subrogee of the building owners, may only be asserted against the party with whom its insureds contracted, i.e., Defendant Tristar.

Likewise, Defendant Tristar, by virtue of its alleged oral contract with Defendant Precision, is the only party in this lawsuit with grounds to assert a claim against Defendant Precision based on the non-delegable contractual duty discussed in Winters. Defendant Tristar asserted these claims in its Cross-Claim against Defendant Precision (DE#22, p. 11), but has not filed a Motion for Summary Judgment against Defendant Precision on these grounds.

Plaintiff's Memorandum of Law in Support of its Motion against Defendant Precision asserts that "[i]f the Court grants plaintiff's motion for partial summary judgment as to liability against Tristar, plaintiff has a right to Tristar's claim against Precision to recover the money that is owed to plaintiff." Other than a general recitation of the basic concepts of subrogation law, Plaintiff cites no legal precedent to support this assertion.

Pursuant to Winters, if the Court grants Plaintiff's Motion for Summary Judgment against Defendant Tristar, Defendant Tristar would then have grounds, per its alleged oral contract with Defendant Precision, to file a Motion for Summary Judgment based on breach of implied duty against

6

Defendant Precision. Defendant Precision, per its written contract with Defendant LS, would then have grounds to file a Motion for Summary Judgment for breach of implied duty against Defendant LS. The indispensable link amongst these causes of action premised on Winters is the *privity of contract* between each set of parties.

Absent a specific contractual provision between Plaintiff and Defendant Tristar or an independent assignment agreement between these parties, Plaintiff has no right to Defendant Tristar's Cross-Claim against Defendant Precision. Plaintiff presents no legal authority for the precept that it can wrest away and assert Defendant Tristar's Cross-Claim for Defendant Tristar absent Defendant Tristar's consent to do so.

At the current juncture in this case, and absent an independent agreement between Plaintiff and Defendant Tristar, Plaintiff's only direct claim against Defendant Precision sounds in negligence. Plaintiff, however, is presumably aware that summary judgment based on a tort theory is difficult to achieve so early in a lawsuit when the parties have not yet completed (and have barely commenced) written discovery. In its effort to prematurely speed this lawsuit to resolution, Plaintiff attempts to create a breach of contract claim between the building owners and Defendant Precision without the existence of an actual contract between these parties.

For the aforementioned reasons, Defendant respectfully requests that the Court reject Plaintiff's Motion for Summary Judgment as to liability against Defendant Precision.

**II. Plaintiff's Motion for Summary Judgment as to damages and pre-judgment interest should be declined because the Motion misconstrues the proper measure of damages to be applied in this case.**

**A. Plaintiff's demand for a damages judgment against Defendant Precision should be declined.**

For the reasons outlined above, Plaintiff is without basis to demand that a final judgment be entered against Defendant Precision as to liability on its breach of contract claim. Suffice it to say, if the Court rules in Defendant Precision's favor on this issue, the damages argument in Plaintiff's Motion would be rendered moot.

Even if the Court finds that Plaintiff is entitled to a liability judgment against Defendant Precision under Winters, the Court should reject Plaintiff's request that a judgment be entered against Defendant Precision for damages. Plaintiff's Motion oversimplifies the proper measure of damages to be applied in this case, which requires an examination of both the before and after value of the subject apartment building, as well as the cost of restoration.

The longstanding measure for damages to real property under Tennessee law is set forth in the 1975 case Fuller v. Orkin Exterminating Co., 545 S.W.2d 103 (Tenn. 1975). Fuller holds as follows:

> **Our appellate courts have uniformly held that the measure of damages for injury to real estate is the difference between the reasonable market value of the premises immediately prior to and immediately after injury but if the reasonable cost of repairing the injury is less than the depreciation in value, the cost of repair is the lawful measure of damages. Of course, the trier of fact can also take into consideration the reasonable cost of restoring the property to its former condition in arriving at the difference in value immediately before and after the injury to the premises.**

Fuller, 545 S.W.2d at 108. (internal citations omitted). This precedent contemplates that litigants present the trier of fact with proof of both the before and after value of the real property, as well as the cost of restoration.

Fuller has not been overturned or abrogated since its issuance in 1975.

The Tennessee Pattern Jury Instruction on this subject echoes Fuller. Tennessee Pattern Jury Instruction § 14.45 directs that the proper measure of damage to real property is "the lesser of the following amounts: 1. The reasonable cost of repairing the damage to the property; or 2. The difference

8

between the fair market value of the premises immediately prior to and immediately after the damage." Like Fuller, this jury instruction contemplates a consideration of both the before and after value of the real property, as well as the cost of restoration, and directs the trier of fact to adopt the lesser amount.

Plaintiff's Memorandum of Law attempts to deemphasize Fuller. Plaintiff relies on Radant v. Earwood, No. 02A01-9802-CV-00029, 1999 Tenn. App. LEXIS 390 (Tenn. Ct. App. June 22, 1999)(attached as "Exhibit B"), Redbud Coop. Corp. v. Clayton, 700 S.W.2d 551 (Tenn. Ct. App. 1985), Killian v. Campbell, 760 S.W.2d 218 (Tenn. Ct. App. 1988), and McKinney v. Smith County, No. M1998-00074-COAR3CV, 1999 Tenn. App. LEXIS 745 (Tenn. Ct. App. Nov. 5, 1999)(attached as "Exhibit C") for the precedent that cost of restoration is the exclusive measure of damages to be applied in this case.

Radant approvingly cites Fuller and is not directly applicable to our current fact scenario. 1999 Tenn. App. LEXIS 390 at *18. Radant addresses the proper measure of damages in a case with customary construction defects, not the complete destruction of a property as in the present case. Id. at *1-2.

Additionally, the Court of Appeals' ruling in Radant is a difficult application to the current facts because the basis for the underlying trial court award could not be discerned by the Court of Appeals. Id. at *16. The trial court awarded a $30,000.00 judgment and its ruling "referred to the uncontroverted testimony on the devaluation of the home, then referred to this amount as 'adjusted according to cost of repair.'" Id.

At the end of the day, Radant is in harmony with Fuller and Pattern Jury Instruction § 14.45 because, after comparing possible restoration damages of "$37,240.00" and diminution damages "between $35,000.00 and $60,000.00," the Court of Appeals determined that "under these circumstances," the *lesser* amount ($37,240.00) was appropriate. Id. at 20.

Radant relied on precedent from Redbud. Redbud cites Fuller with approval at 700 S.W.2d at 559.

Redbud applied the cost of repair as the measure of damages, but outlined three (3) specific reasons for this decision. 700 S.W.2d at 561. Each reason pertained to the difficulty in calculating

9

diminution in value with reasonable certainty for each of the homes affected by a defective drainage system. Id. Those factors are specific to the case facts of Redbud. None of those factors is present in the current lawsuit.

Killian involved a complicated factual scenario in which a property owner filed an counter-complaint seeking damages for injury to her land arising out of her grandson's placement of a mobile home on her property. 760 S.W.2d at 219. The Court of Appeals declined to rule on the damages issue because "[t]he claim by the plaintiff for damages to her land was all but abandoned at trial." Id. at 222.

Plaintiff presumably cites to Killian in an attempt to analogize the factual scenario in that case to the current case in its efforts to recover the cost of restoration of the subject apartment building. Given that the current case involves the almost total destruction of a 20 unit apartment building and Killian involved a property owner's demand for damages for the placement of a mobile home on her property, this analogy is inapposite. The comparison between the two (2) factual scenarios yields the conclusion that the destruction of the subject apartment is a far more permanent injury to the real property than the alleged impermissible placement of a mobile home and therefore "depreciation in the value will be an element of damages." Id. at 222.

Plaintiff cites to a footnote in McKinney which mentions Killian. McKinney is distinguishable from the current case because the cited footnote appears in the midst of a discussion of the proper measure of damages in an inverse condemnation action. 1999 Tenn. App. LEXIS 745 at *1.

Regardless, the McKinney Court primarily concerned itself with correcting the trial court's "mistaken assumption that McKinney was entitled to recover both for the diminution in value of his property and for the cost to restore access to the property." McKinney, 1999 Tenn. App. LEXIS 745 at *23. When the Court of Appeals remanded the case back to the trial court "for a new trial on damages," the Court ultimately concluded that "the landowner may recover either for the diminished value of his property or the cost to restore access, whichever is less." Id. at *22-23. The Court specifically cited to Fuller as one of the authorities which supported this ruling. Id.

This survey of case law confirms the rationale of the Court of Appeals in Redbud that "[o]ur courts have approached the question of the measure of damages to real property from several different directions." 700 S.W.2d at 559. The most reasonable reading of these cases contemplates that both the before and after value of a destroyed property and the cost of restoration of the property be presented to the trier of fact for consideration.

In light of the fact that the parties in this lawsuit have not yet completed (and have barely even commenced) written discovery and the expert disclosure deadline for Defendants does not elapse until November 3, 2015 (DE#49), Defendants have had virtually no opportunity to present the Court with proof of the before and after value of the destroyed property. Based on Fuller, which is still good law and consistently cited in Tennessee case law, the trier of fact is entitled to consider this proof before assessing a damages award.

For these reasons, Defendant Precision asks the Court to decline Plaintiff's Motion for a damages award based on the incomplete damages proof set forth by Plaintiff.

**B. Plaintiff's demand for pre-judgment interest should be declined.**

Applying the equitable factors from the BFI Waste Services, LLC case cited by Plaintiff in its Motion, the Court should decline Plaintiff's demand for pre-judgment interest in this case pursuant to Tennessee Code Annotated Section 47-14-123. These factors are as follows:

> **(1) promptness in the commencement of the action;**
> **(2) unreasonable delay in the proceedings by either party;**
> **(3) abusive litigation practices;**
> **(4) the certainty of the existence of the underlying obligation;**
> **(4)(sic) the certainty of the amount in dispute;**
> **(5) prior compensation for the lost time value of the plaintiff's money.**

Metro Gov't v. BFI Waste Servs., LLC, No. M2011-00586-COA-R3-CV, 2012 Tenn. App. LEXIS 189 at * (Tenn. Ct. App. Mar. 22, 2012)(attached as "Exhibit D"). Defendant Precision would aver that the second through the fifth listed factors weigh against an award of pre-judgment interest at the current juncture in this lawsuit.

As noted above, Plaintiff commenced this lawsuit (DE#1) on November 13, 2014. Defendant Precision timely responded with its Answer (DE#19) on December 19, 2014. The parties entered into the Initial Case Management Order (hereinafter "ICMO") (DE#49), which was filed on March 5, 2015. All parties to this litigation have thus far complied with the deadlines in the ICMO, including initial disclosures and the ninety (90) day conference. Plaintiff filed the present Motion against Defendant Precision nine (9) days after the official adjournment of the ninety (90) day conference and at the very commencement of the Defendants' efforts to serve written discovery requests.

The parties' rapid procession through the litigation timeline demonstrates that none of the Defendants have attempted to delay the progress of the lawsuit, not to mention unreasonably delay the case. Likewise, given the parties' compliance with the terms of the ICMO, the Defendants cannot be said to have engaged in abusive litigation practices.

Defendant would also contend that the certainty of the existence of an underlying obligation and the certainty of the amount in dispute are far more complicated issues than Plaintiff characterizes them to be. While the parties agree about the occurrence of the subject fire and, for the purpose of the present Motion, mostly agree on the primary alleged tortious act which caused the fire, the "obligation" to compensate Plaintiff is still highly disputed.

This case involves eight (8) party Defendants. The terms of Plaintiff's relationship with Defendant Tristar and Defendant Tristar's relationship with Defendant Precision are governed by unwritten contracts.

Defendant Precision has a written subcontract with Defendant LS, but Defendant LS has taken the position that it is not the employer of the Defendant plumbers. Further complicating matters, Defendant LS' insurer has filed a companion declaratory judgment action and seeks to avoid coverage of Defendant LS and the Defendant plumbers.

Defendant Precision and Defendant Tristar have alleged the comparative fault of the Nashville Fire Department (NFD), which did not totally extinguish what was a relatively modest fire upon its first visit to the subject property on the night of the fire. (DE#19, p. 10). But for NFD's alleged negligence,

the damages in this lawsuit would be significantly lessened. Accordingly, it is highly disputed which Defendant or combination of Defendants (or non-party) bears an "obligation" to pay damages to Plaintiff.

Finally, for the reasons outlined above in Section II.A. of this Response, the amount at issue in this lawsuit is not certain. Plaintiff presents the amount it paid its insured as conclusive proof of damages without (1) allowing Defendants the opportunity to consult and disclose damages expert(s) in accordance with the deadline in the ICMO; and (2) without heeding the <u>Fuller</u> directive that the trier of fact be presented with both of the two (2) potential measures of damages in this case. Thus, despite Plaintiff's protests otherwise, the damages issue is not certain or in any way conclusively determined at this stage in the lawsuit.

Defendant Precision asks the Court to consider the above-cited equitable factors and the current circumstances of this lawsuit, and to decline Plaintiff's demand for pre-judgment interest.

Respectfully submitted,

/s/ Colin M. McCaffrey_____
Colin M. McCaffrey, Esq., BPR#023771
**Law Office of Michele B. Fassbender**
1000 NorthChase Drive
Suite 250
Goodlettsville, TN 37072
(615) 851-4587 telephone
(615) 851-4590 facsimile

**Counsel for Defendant Precision Plumbing, Inc.**

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing served on the following parties:

G. Andrew Rowlett, Esq.
Meredith L. Eason, Esq.
Howell & Fisher, PLLC
Court Square Building
300 James Robertson Parkway
Nashville, TN 37201-1107

Thomas C. Corts, Esq.
Andrea S. Freeman, Esq.
Ortale, Kelley, Herbert,& Crawford
330 Commerce Street
Suite 110
Nashville, TN 37201

Robert W. Briley, Esq.
Kenneth R. Shuttleworth, Esq.
Shuttleworth Williams, PLLC
230 Fourth Ave. North, Suite 500
Nashville, TN 37219

Rebecca W. Demaree, Esq.
Cornelius & Collins, LLP
Parmenter Nashville City Center
511 Union Street, #1500
Nashville, TN 37219

on this the 27th day of May 2015.

/s/ Colin M. McCaffrey_____
Colin M. McCaffrey